# Lee v. Bernard

2

*Marc I. Simon*, for plaintiffs.
*Steven P. Cholden*, for defendants.

SHREEVES-JOHNS, *J.*, Nov. 19, 2014—Plaintiffs Yeung Woo and OK H Lee (hereinafter "plaintiffs"), husband and wife, brought the underlying personal injury action against both John P. Bernard and Comcast of Philadelphia II, LLC. (collectively referred to as "defendants") seeking redress for alleged injuries resulting from a motor vehicle accident.

On July 18, 2014, following a jury trial, the jury rendered a verdict finding that the defendants were not the factual cause of any harm to plaintiff Yeung Woo Lee. However, the jury found the defendants' negligence to be the factual cause of plaintiff, Ok H Lee's injuries and awarded her $5,000.00 in damages.

Following the verdict, plaintiff filed a timely motion for post-trial relief seeking a new trial. In their motion,

plaintiffs raised the following issue:

1. Whether the court erred in deciding that plaintiffs' medical expert was precluded from offering opinions as to the reasonableness and necessity and relatedness of plaintiffs' laser spine surgical procedure.

## FACTS

The facts relevant to this motion are as follows: as a result of the alleged injuries sustained in the motor vehicle accident, both plaintiffs underwent surgical procedures performed by Dr. Keith Girton at the Laser Spine Institute. Plaintiffs' counsel produced expert reports from family practitioner, Dr. Gregory Temple for each plaintiff in which Dr. Temple opined that the laser spine surgeries were reasonably related to the underlying motor vehicle accident.

During Dr. Temple's depositions relating to both Yueng Woo Lee and OK H. Lee, plaintiffs' counsel asked Dr. Temple whether he had "an opinion to within a reasonable degree of medical certainty as to the reasonableness and necessity of all the treatment that Mr. Lee received following the accident?" *See* temple trial deposition transcript, 05/20/14, p.50, lines 4-8. On both occasions, defense counsel raised the following objection:

"The only objection I have is with regard to the surgery as being beyond the scope of this physician's expertise. Obviously, he can discuss the treatment that would be rendered by the chiropractor and some of the other treatments...but...surgery is beyond the scope of this witness's expertise."

*See* temple trial deposition transcript, 05/20/14, pp.50-51, lines 17-3; *see also* trial deposition transcript of Dr.

Temple regarding plaintiff, Yeung Woo Lee at 24.

At trial, this court sustained the defense's objection as to Dr. Temple's testimony regarding the reasonableness and necessity of plaintiffs' laser spine surgery. (N.T., 7/15/13 at 31:8).

## DISCUSSION

### I. STANDARD OF REVIEW FOR POST-TRIAL RELIEF.

In Pennsylvania, after a trial, and upon the written motion of any party, a court may: (1) order a new trial as to all or any of the issues; (2) direct the entry of judgment in favor of any party; (3) remove a nonsuit; (4) affirm, modify or change the decision; or (5) enter any other appropriate order. Pa.R.C.P. 227.1(a).

### II. STANDARD FOR GRANTING A MOTION FOR A NEW TRIAL.

It is well settled that the grant or denial of a new trial rests in the discretion of the trial court. *Kiser v. Schulte*, 648 A.2d 1, 4 (1994); *see also Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. 1997). A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it "shocks one's sense of justice." *Kiser*, 538 Pa. at 226, 648 A.2d at 4. The review of a trial court's grant or denial of a new trial is limited to whether there was an abuse of discretion or error of law. *Neison v. Hines*, 653 A.2d 634, 636 (1995). The court must consider the evidence in the light most favorable to the verdict winner, the verdict winner must be given the benefit of every inference of fact arising therefrom, and any conflict in the evidence must be resolved in favor of the verdict winner. *Metts v. Griglak*, 264 A.2d 684, 686 (Pa. 1970). The harmless error doctrine underlies every decision to grant

or deny a new trial. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (2000). "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would rule differently; the moving party must show prejudice resulting from the mistake." *Id.*

III. WHETHER THE COURT ERRED IN DECIDING THAT PLAINTIFFS' MEDICAL EXPERT WAS PRE-CLUDED FROM OFFERING OPINIONS AS TO THE REASONABLENESS AND NECESSITY AND RELAT-EDNESS OF PLAINTIFFS' LASER SPINE SURGICAL PROCEDURE.

In the case at bar, plaintiffs argue that the trial court erred in concluding that plaintiffs' testifying medical expert was precluded from offering opinions as to the reasonableness and necessity of surgical procedures. *See* plaintiff's brief at 1.

Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court, whose decision will not be disturbed absent a clear indication of abuse of that discretion. *Bennyhoff v. Pappert*, 790 A.2d 313, (2001), *app. dn.* 823 A.2d 143 (2003). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 2002 Pa. Super. 142 (2002) *app. dn.* 572 Pa. 742 (2003).

A. Qualification for Opinion Testimony.

Under Pennsylvania law, it is well-settled that rulings concerning the admission of expert testimony are generally committed to the trial court's sound discretion. *Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528-29 (1995); *see also Dambacher v. Mallis*, 485 A.2d 408 (Pa. Super.

6

1984).

Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has expertise with the subject matter of the witness' testimony. 2 Fitzgerald, Intoxication Test Evidence § 67:4 (2d. ed.). Before permitting an alleged expert witness to give an opinion, the court must make a preliminary finding that the witness is legally competent and has the required qualifications to offer an opinion on the matter. The qualification, or lack of qualification, of an expert witness is a matter within the discretion of the trial court. *Kravinsky v. Glover*, 396 A.2d 1349 (1979). *McDaniel v. Merck, Sharp and Dohme*, 533 A.2d 436 (1987) ("The next question the court should ask is whether the witness has sufficient skill, knowledge or expertise in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.").

B. UNDER PENNSYLVANIA LAW, DR. TEMPLE DID NOT POSSESS THE NECESSARY SKILLS OR QUALIFICATIONS TO OFFER AN OPINION AS TO THE REASONABLENESS AND NECESSITY OF PLAINTIFFS' SURGICAL PROCEDURES PERFORMED AT THE LASER SPINE INSTITUTE.

In the instant matter, the record reveals that Dr. Temple is board certified in primary care family medicine with no experience or training in laser spinal surgery. More specifically, "Dr. Temple was offered as an expert in the area of family medicine," and was permitted to testify regarding his treatment of plaintiffs. *See* plaintiff's brief at 3 (emphasis added). Notwithstanding, plaintiffs sought to offer Dr. Temple's opinion as to the reasonableness and necessity of plaintiffs' surgery in the highly specialized field of laser spinal surgery. The crux of plaintiffs'

argument is that "all medical doctors are qualified to testify concerning medical subjects." *See* plaintiffs brief at 3. Plaintiffs boldly claim that Dr. Temple is qualified to testify as to the reasonableness and necessity of both Yeung Woo Lee and OK H Lee's laser spine surgery by virtue of his experience as a "general practitioner who deals with orthopedic injuries and makes recommendations to his patients" and due to his experience in the area of "family medicine." *See* plaintiff's brief at 3. This argument, however, incorrectly circumscribes the scope of the Pennsylvania Rule of Evidence and whether an individual possesses the necessary qualifications to provide expert testimony.

In order to assist the factfinder, the proffered knowledge of the witness must concern the specific inquiry for which the expertise is offered. *See McDaniel v. Merck, Sharp and Dohme*, 533 A.2d 436 (1987). In the case at hand, there has been no evidence adduced of record showing, or even tending to show, that Dr. Temple possessed the requisite education or experience in laser spinal surgery so as to render an opinion as to the reasonableness and necessity of such procedure. Indeed, Pennsylvania common law recognizes that "in the area of medicine, specialties sometimes overlap and a practitioner may be knowledgeable in more than one field. Different doctors will have different qualifications, some doctors being more qualified than others to testify about certain medical practices." *Wexler v. Hecht*, 847 A.2d 95, 99 (Pa. Super. 2004). However, "a medical witness must have some familiarity with the particular medical or surgical technique involved in the suit" in order to proffer an opinion. *Ragan v. Steen*, 331 A.2d 724, 735 (1974). Simply put, an expert must demonstrate some knowledge of the specific subject matter upon which he promises to express an opinion. *See,*

*In Re: Involuntary Termination of Parental Rights*, 297 A.2d 117 (1972).

In a case materially similar to the instant matter, the Superior Court in *Dambacher v. Mallis*, 485 A.2d 408 (1985), held that it was improper to allow testimony of a witness who had no expertise in the specialized subject at issue. More importantly, the court did not mince words when it stated:

> It may appear that the scope of the witnesses experience and education may embrace the subject in question in a general way, *but the subject may be so specialized that, even so, the witness will not be qualified to testify.* Thus, every doctor has a general knowledge of the human body. But an ophthalmologist, for example, is not qualified to testify concerning the causes and treatment of heart disease.

*Dambacher v. Mallis, supra* at 32, 485 A.2d at 418; *see also, Wexler v. Hecht*, 847 A.2d 95 (2004) *aff'd*, 593 Pa. 118, 928 A.2d 973 (2007) (a podiatrist is not qualified to render expert opinions regarding the care and treatment provided by an orthopedic surgeon.); *Dierolf v. Slade*, 581 A.2d 649 (1990) (upholding trial court's refusal to qualify orthodontist as an expert witness on oral surgery); *McDaniel v. Merck, Sharp and Dohme*, 533 A.2d 436 (1987) (physician specializing in anesthesiology not qualified to express an opinion regarding, among other things, the alleged misuse of antibiotic drug where physician had no clinical or research experience with the drug at issue.

Here, plaintiffs have made the novel argument that "all medical doctors are qualified to testify concerning medical subjects and it is for the jury to determine the weight to be given to the expert

testimony" citing *Commonwealth v. Morris*, 207 A.2d 921 (1965), and *Ragan v. Steen*, 331 A.2d 724, 726 (1974). *See* plaintiff's brief at 2. However the defect in plaintiffs' argument can be traced to the cases plaintiffs rely upon. Neither *Morris* nor *Ragan* established the bright-line rule, as plaintiff states, that "all medical doctors are qualified to testify concerning medical subjects." *See* plaintiff's brief at 2. As a matter of fact, plaintiffs' counsel took the creative license in stretching, and manipulating the court's decision in *Ragan*. More specifically, in *Ragan*, the court stated:

> "It is time that Pennsylvania join the states which have recognized the absurdity of permitting witnesses to testify as experts simply by virtue of their licenses or degrees.

The court continued:

> The new discoveries, the innovative procedures and practices, and even the birth of fields unknown to medical science just a few years ago (cancer immunologists, transplant specialists, fetologists, and specialists in nuclear medicine, to name a few), have flooded medical science with data no one man can possibly digest. Physicians have gone so far as to set up a referral system taking a patient from a diagnostic specialist (-ologist) to a specialty surgeon (e.g., neurologist-neurosurgeon, Cardiologist-Cardiac surgeon). This system is so well implanted that a general practitioner would be exposing himself to potential malpractice by attempting to treat a condition properly referable to a specialist. *Physicians are themselves the first to admit the folly of treating a condition on the basis of their textbook or medical school experience*, with the virtual certainty that a bad result would be easily linked to a failure to take

cognizance of or utilize a course of treatment which had developed within a given specialty through clinical studies, medical treatises, and theoretical experience. We, as lawyer-judges, must take cognizance of the realities of a burgeoning and progressing world. It is neglect of the first order, and a death blow to the medical world, to ignore such facts.

*Ragan v. Steen*, 331 A.2d 724, 734-35 (1974) (emphasis added). In its entirety, it is clear this case does not support plaintiffs' position as he leads the court to believe.

As stated above, the subject matter at issue concerns a family physician's expert testimony as to the reasonableness and necessity of plaintiffs laser spine surgery. Indeed, attendance in medical school doubtlessly familiarized Dr. Temple with the basic parameters of medicine. Nonetheless, Dr. Temple's practice as a family practitioner was a general practice, in that it was not limited to a specific branch of medicine, and as a general practitioner, Dr. Temple was not a specialist in any area of medicine. The reasonableness and necessity of a patient receiving highly complex spinal surgery is a matter of specialized knowledge which is not typically embodied within the knowledge or education of a general family practitioner and therefore was not within the ken of plaintiffs' expert, Dr. Temple. Dr. Temple's area of practice is unrelated to that of Dr. Keith Girton's specialty, and there are no facts of record to support any contrary conclusion.

As plaintiffs' counsel state, Dr. Temple is — at best — "a general practitioner who deals with orthopedic injuries and makes recommendations to his patients." *See* plaintiff's brief at 3. At no point in the proceedings did plaintiffs' counsel or Dr. Temple further develop the record to prove that he did in fact possess any specialized knowledge

regarding laser spine surgeries or the reasonableness and necessity of such treatment. Moreover, Dr. Girton was the actual surgeon who performed the laser spine surgery on both plaintiffs. Therefore, plaintiffs were free to have utilized Dr. Girton to testify that the procedures were reasonable, necessary and related to the April 23, 2012 accident: yet, plaintiffs' counsel chose not to call Dr. Girton to testify.

In light of the foregoing, and notwithstanding Pennsylvania's liberal standard for qualification of expert witnesses, the trial court can imagine no reasonable professional calculation which would support a finding that Dr. Temple, a general family medicine practitioner, had a reasonable pretension to such specialized knowledge, or that his opinions or inferences would have aided the jury in its role as factfinder as to the reasonableness and necessity of a highly specialized laser spinal surgery. Therefore, "If a witness possesses neither experience nor education in the subject matter under investigation, he should not be qualified [as an expert]." *Dierolf v. Slade*, 581 A.2d 649, 651 (1990).

C. EVEN ASSUMING ARGUENDO THAT DR. TEMPLE SHOULD NOT HAVE BEEN PRECLUDED TO TESTIFY, THE MISTAKE, IF ANY, AMOUNTED TO NOTHING MORE THAN HARMLESS ERROR.

Plaintiffs argue that this court's decision to preclude Dr. Temple's testimony as to the reasonableness and necessity of plaintiffs' laser spine surgery was erroneous and therefore, grounds for a new trial. However, the salient question in addressing plaintiffs' argument is whether plaintiffs were prejudiced by this court's refusal. *See Harman ex rel. Harman v. Borah*, 756 A.2d 1116 (2000) ("the moving party must demonstrate to the trial court that

12

he or she has suffered prejudice from the mistake.).

Even if precluding Dr. Temple's testimony was an error, it was harmless as the verdict returned by the jury did not rely on Dr. Temple's testimony as to the reasonableness and necessity of plaintiffs' laser spine surgery. With respect to plaintiff, Yuen Woo Lee, the verdict form presented the jury with the following two questions: (1) Was the negligence of defendants, John Bernard and Comcast of Philadelphia II, LLC a factual cause of harm to plaintiff, Yeung Woo Lee? and (2) Do you find that plaintiff, Yeung Woo Lee sustained a serious impairment to a body function as a result of the accident of April 23, 2012? The jury answered "no" to the first question and found that defendants were not the factual cause of any harm to plaintiff Yeung Woo Lee.

By contrast, however, with respect to plaintiff, Ok H. Lee, the jury found that the defendants were the factual cause of harm to Ok H. Lee. Nonetheless, the jury found that plaintiff Ok H. Lee did not sustain a serious impairment to a body function as a result of the underlying accident.

Based on the foregoing, it is clear that the jury's verdict did not hinge on the admission of Dr. Temple's testimony, and the exclusion of said testimony would not have changed the outcome of the trial in any way. Factually speaking, with regards to Yeung Woo Lee, the jury found there to be no evidence which would support a finding that defendants were factually at fault for his injuries. Therefore, it logically follows that the testimony of Dr. Temple as to the reasonableness and necessity of Yeung Woo Lee's spinal surgery procedure would have been meaningless in assisting the jury to reach a verdict. Similarly, with respect to Ok H. Lee, albeit the jury found the defendants' negligence to be the factual cause of

plaintiff's injuries, based on the facts, the jury found that Ok H. Lee did not sustain a serious impairment to a body function which would require the assistance of expert testimony preferred by Dr. Temple.

Regardless of the rubric used, the analysis is the same. Whether or not plaintiffs' laser spine surgery was reasonable or necessary was superfluous in aiding the trier of fact "in their search for truth." *McDaniel v. Merck, Sharp and Dohme*, 533 A.2d 436 (1987). Even generously construed, plaintiffs brief does not demonstrate that the trial court abused its discretion or made an error of law. It bears noting that plaintiffs have also failed to show prejudice resulting from the alleged mistake — if any.

Accordingly, plaintiffs' motion for a new trial was properly denied.

## ORDER

And now, this 19th day of Nov. 2014, upon consideration of defendants, Comcast of Philadelphia II, LLC and John P. Bernard's response to plaintiffs' post-trial motions, it is hereby ordered and decreed, that said plaintiffs' motion is denied.