J-A30037-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| FRANCIS G. GRAHAM, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LARRY CHECK, | : | |
| | : | |
| Appellee | : | No. 909 WDA 2018 |

Appeal from the Judgment Entered June 13, 2018
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD16-020645

BEFORE: SHOGAN, J., KUNSELMAN, J., and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: FILED MARCH 19, 2019

Francis G. Graham appeals from a judgment entered against him and in favor of Larry Check. We affirm.

This case stems from a motor vehicle accident, which occurred slightly before six o'clock in the morning on March 8, 2016. A vehicle operated by Check struck Graham as Graham attempted to cross Route 30, which is a four-lane roadway in the Borough of East Pittsburgh. At the intersection Graham was attempting to cross, Route 30 and Center Street form a "T," with Route 30 at the top and Center Street at the stem. There is a bus stop on the westbound side of Route 30 near the intersection. Graham intended to catch a bus traveling westbound, which was scheduled to arrive at six o'clock a.m. After realizing he did not have correct change for the bus, Graham began crossing Route 30 to get change from a nearby gas station. Graham entered

_____

*Retired Senior Judge assigned to the Superior Court.

the crosswalk on Route 30 while the traffic light was red. He did not know how long the light had been red when he started crossing and he did not check the pedestrian crossing signals. It was dark, Graham was wearing dark-colored clothing, and there was little ambient lighting at the intersection.

Meanwhile, Check was driving a vehicle traveling on Route 30 eastbound. The headlights of Check's vehicle were on, Check was not on his cell phone or otherwise being unattentive, and he was traveling below the speed limit.[1] Check testified he was approaching the intersection when the light turned to green, but he could not see Graham because it was dark and another vehicle driven by Joseph Millach obstructed his view.

The light on Route 30 changed to green when Graham was approximately three-quarters of the way across the road. Seeing he had a green light, Check accelerated his vehicle until he saw Graham just feet in front of his vehicle. According to Check's testimony at trial, he braked immediately, but he could not determine whether any actual braking occurred prior to impact. Check's vehicle hit Graham causing injury to him. Graham testified he did not see Check's vehicle until moments before it hit him.

Graham filed a complaint against Check on October 27, 2016. Check filed an answer and new matter. Following discovery, the case proceeded to a jury trial, which was held April 2 through April 5, 2018. On April 5, 2018,

---

[1] The parties dispute the exact rate of speed, but all agree it was well below the speed limit.

the jury returned a verdict in favor of Check and against Graham, having found no negligence on the part of Check.

Graham timely filed a motion for post-trial relief. Following briefing and argument, the trial court denied Graham's motion on June 5, 2018. Judgment was entered against Graham on June 20, 2018. Graham timely filed a notice of appeal. Both Graham and the trial court complied with Pa.R.A.P. 1925.

Graham raises two issues on appeal: (1) whether the trial court erred by instructing the jury on the sudden emergency doctrine and (2) whether the trial court erred by refusing to provide the jury with a custom instruction requested by Graham. See Graham's Brief at 4.

> Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law[,] which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.
>
> The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.
>
> In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

Pledger by Pledger v. Janssen Pharm., Inc., 198 A.3d 1126, 1146 (Pa. Super. 2018). "[W]e are mindful that a trial court is bound to charge only on

- 3 -

that law for which there is some factual support in the record." Levey v. DeNardo, 725 A.2d 733, 735 (Pa. 1999) (citation omitted).

We begin with Graham's claim regarding the sudden emergency doctrine. Our Supreme Court has explained the sudden emergency doctrine as follows.

> The sudden emergency doctrine … is available as a defense[2] to a party who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little or no opportunity to apprehend the situation and act accordingly. The sudden emergency doctrine is frequently employed in motor vehicle accident cases wherein a driver was confronted with a perilous situation requiring a quick response in order to avoid a collision. The rule provides generally, that an individual will not be held to the "usual degree of care" or be required to exercise his or her "best judgment" when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine. The rule recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability simply because another perhaps more prudent course of action was available. Rather, under such circumstances, a person is required to exhibit only an honest exercise of judgment. The purpose behind the rule is clear: a person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence. It is important to recognize, however, that a person cannot avail himself of the protection of this doctrine if that person was himself driving carelessly or recklessly.

---

[2] The sudden emergency doctrine is often referred to as a defense. However, our Supreme Court has made clear that the doctrine is not an affirmative defense, but instead a standard of conduct to be applied under specific circumstances. Leahy v. McClain, 732 A.2d 619, 622 (Pa. 1999).

Lockhart v. List, 665 A.2d 1176, 1179-80 (Pa. 1995) (footnotes and citations omitted).

At trial, Graham objected to the trial court's instructing the jury regarding the sudden emergency doctrine, arguing Graham was more like a stationary object and not a sudden, moving emergency. N.T., 4/2-5/2018, at 313-14, 396. The court rejected Graham's argument, and instructed the jury in the following manner.

> In this case, Check claims he is not liable for Graham's harm because he faced a sudden emergency and responded reasonably according to the circumstances. In order to establish this defense, Check must prove to you all of the following:
>
> 1. Check faced a sudden emergency requiring immediate responsive action.
>
> 2. Check did not create the sudden emergency.
>
> 3. Check's response to the sudden emergency was reasonable under the circumstances.
>
> 4. Check must prove that defense by a preponderance of the evidence.

N.T., 4/2-5/2018, at 382-83 (first names omitted).

On appeal, Graham argues that the sudden emergency doctrine was inappropriate under the facts of the case, namely that Graham was in a crosswalk, Check was familiar with the road, and Graham should have been visible to Check if he was paying attention. Graham's Brief at 11-16. Graham contends that because Check had the duty to anticipate the presence of a pedestrian at an intersection in a crosswalk, and Check should have been

capable of seeing Graham before he did, Graham's presence in the crosswalk was foreseeable and therefore was not a sudden emergency. Id.

In a case involving whether a motorist was negligent in striking a pedestrian with his car, the test is not whether a motorist saw the pedestrian before impact, but whether the motorist should have seen the pedestrian before impact. Forsythe v. Wohlfarth, 209 A.2d 868, 870-71 (Pa. Super. 1965). Thus, while a motorist has a duty to look out for a pedestrian who may be crossing at an intersection, he also may benefit from the sudden emergency doctrine if the pedestrian appears in a crosswalk in such a fashion that it presents an emergency to the motorist. Id. (holding the jury should decide whether motorist should have seen pedestrian in the crosswalk before impact or whether motorist was presented with a sudden emergency).

In the instant case, both Check and Millach, who was the only eyewitness to the accident, testified that it was very dark, the intersection was not well lit, Graham was wearing dark-colored clothing, and he was still crossing the road when the light turned green. N.T., 4/2-5/2018, at 50-72, 94-124. Check, who was traveling in the fourth lane eastbound, testified that as he approached the intersection, his view of the crosswalk was partially obstructed by Millach's vehicle, which was stopped in the third lane eastbound at the light. Id. at 99, 110. Check had travelled the same route for over 30 years going to and from work, and he rarely saw anyone traversing from the direction Graham was that morning. Id. at 88-91. Neither Check nor Graham

saw each other until shortly before impact. Id. at 99, 124, 153, 300. As soon as he saw Graham, who by then was approaching his lane, Check slammed on his brakes. Id. at 95. Graham was clearly not stationary in the cross walk. Although Graham argues Check was inattentive, Check's unrebutted testimony established that the headlights of his vehicle were on, and he was not on his cell phone or otherwise preoccupied. Id. at 115. Even Graham's own testimony indicated that Check was traveling well below the speed limit. Id. at 289. Thus, there were sufficient facts in the record to support the trial court's decision to instruct the jury regarding the sudden emergency doctrine, leaving it to the jury to decide whether or not Graham's presence in the crosswalk presented a sudden emergency to Check. See Forsythe, 209 A.2d at 870-71.

In his second issue, Graham argues the trial court's instruction regarding a driver's duty to yield did not provide enough guidance to the jury on other duties he claims a motorist owes a pedestrian, such as the duty of vigilance and attentiveness. Graham's Brief at 16-19. Graham asserts he requested specific instructions regarding such duties in his points for charge. Id. at 17.

Despite Graham's contention that the trial court erred by not providing a particular jury instruction, Graham "failed to ensure that the certified record contain[ed] a copy of the instruction." Bennyhoff v. Pappert, 790 A.2d 313, 318–19 (Pa. Super. 2001). The docket sheet indicates that Graham did not

file his proposed points for charge in the trial court. This is fatal to his claim. The failure to include such charge in the certified record means we are "unable to compare the charge [Graham] … requested to the charge actually given in order to determine if the trial court did, in fact, err. As such, [Graham has] waived this claim." Id.

Additionally, Graham did not place a specific objection on the record regarding the trial court's failure to include his requested charge. The trial court never had a chance to rule specifically on the propriety of including the specific charge Graham argues should have been included prior to the jury's verdict. Prior to the in-chambers charging conference, the trial court submitted its proposed charge to the parties, which apparently did not include the charge at issue. At the charging conference, Check's counsel informed the trial court that both Check and Graham were "objecting, excepting as to every point in our proposed points…that was not granted." N.T., 4/2-5/2018, at 319-20. However, the specific charge at issue was never discussed. At trial, the trial court reiterated its statement at the charging conference that all objections made at the charging conference were preserved as if restated at trial. Id. at 396. The trial court asked counsel if they had anything else to say, and both counsel responded no. Id.

Thus, Graham never specifically objected to the trial court's failure to include the particular charge at issue or even the nature of the charge the trial court did provide regarding a driver's duties. Our rules are clear that "[a]

general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of." Pa.R.A.P. 302(b); see also Coffey v. Minwax Co., Inc., 764 A.2d 616, 622 (Pa. Super. 2000) (holding that objection to "all of the jury instructions read by the [c]ourt proposed by defense, which were not standard jury instructions," was not specific enough to comply with Pa.R.A.P. 302(b)). Accord Jones v. Ott, 191 A.3d 782, 791 (Pa. 2018) (plurality) ("[I]n order to preserve a jury-instruction challenge for appeal - absent a specific contemporaneous objection - a litigant must file a proposed point for charge, the trial court must rule upon that instruction, and the litigant must challenge the ruling in its post-trial motion."). Accordingly, for all of the reasons stated, Graham failed to preserve this issue for appellate review.[3]

After reviewing the trial court's jury charge in its entirety, while taking into consideration all of the evidence of record, we conclude that the charge did not contain prejudicial error as to Graham. Consequently, the trial court

---

[3] Even if we were to rule upon Graham's issue, we would conclude that the trial court did not abuse its wide discretion in concluding that this case did not warrant a deviation from the standard jury instructions. See Harman ex rel. Harman v. Borah, 756 A.2d 1116, 1127 (Pa. 2000) ("A trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate statement of law, there is no reversible error."). We have reviewed the trial court's charge to the jury as a whole, and conclude that the trial court accurately stated the law regarding negligence, the general duty of care, and a driver's responsibility to pedestrians when the driver is proceeding through a green light. N.T., 4/2-5/2018, at 368-96.

did not err by denying Graham's post-trial motion for a new trial. For these reasons, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/19/2019